AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>JORGE LUIS CRUZ<br>a/k/a JORGE LUIS CRUZ IBARRA<br><br>*Defendant(s)* | Case No. **CR 25-70341-MAG** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 11, 2024__ in the county of __Santa Cruz__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count One: 21 U.S.C. 841(a)(1) and (b)(1)(B)(vi) | Possession with Intent to Distribute Fentanyl<br><br>PENALTIES: Mandatory minimum of 5 years of imprisonment, maximum 40 years of imprisonment, minimum 4 years of supervised release, maximum lifetime supervised release, maximum $5 million fine, mandatory $100 special assessment fee |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Special Agent Curtis Ames.

NO BAIL ARREST WARRANT REQUESTED

☑ Continued on the attached sheet.

Approved as to form __TL__
AUSA __SAUSA Taylor Lord__

/s/ Curtis Ames/SvK w/permission
*Complainant's signature*

SA Curtis Ames
*Printed name and title*

Sworn to before me by telephone.

Date: __March 24, 2025__

*[signature: Susan van Keulen]*
*Judge's signature*

City and state: __San Jose, CA__

Hon. Susan van Keulen, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Curtis J. Ames, a Special Agent of the Drug Enforcement Administration, having been duly sworn, state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Jorge Luis CRUZ a/k/a Jorge Luis CRUZ Ibarra with 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) based on his possession with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ]), on or about August 11, 2024, in Santa Cruz County, California, within the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part, unless otherwise indicated. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part, unless otherwise indicated.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth facts that I believe are sufficient to

support probable cause for a criminal complaint and arrest warrant.  My understanding of the case's facts and circumstances may evolve as the investigation continues.

**AFFIANT BACKGROUND**

4. I am currently employed by the United States Department of Justice, Drug Enforcement Administration ("DEA") as a Special Agent ("SA").  I have been employed by the DEA since December 2022.  I am currently assigned to the San Jose Resident Office (San Francisco Field Division)- Enforcement Group 1.

5. Prior to becoming a Special Agent with DEA, I worked as a Police Officer in Massachusetts for the Town of Shrewsbury, for approximately three years.  During my time with the Shrewsbury Police Department, I was personally involved in dozens of investigations of and arrests for unlawful possession, possession with intent to distribute, trafficking and distribution of controlled substances, as well as operating under the influence of drugs, and the unlawful possession of firearms.

6. Once becoming a DEA SA, I successfully completed a sixteen-week DEA Basic Agent Training Academy at the DEA Academy in Quantico, Virginia. This training provided instruction in the investigation of federal drug trafficking violations, including several hundred hours of comprehensive and formalized instruction in basic narcotics investigations, drug identification, drug detection, drug interdiction, federal narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, undercover operations, and electronic and physical surveillance procedures.

7. I have also received on-the-job training through my participation in numerous drug trafficking investigations and through my work with other experienced federal, state, and local law enforcement agents and officers. During my employment as a DEA SA, I have

participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement investigators and confidential sources the methods and practices used by drug traffickers. I have also participated in many other aspects of drug investigations including, but not limited to, telephone toll analysis, records research, investigative interviews, and electronic and physical surveillance. I have assisted in court ordered wiretap investigations and in the execution of numerous federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of controlled substances and related items.

8. Through my training, education, experience, and my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. Similarly, I have become familiar with drug traffickers' methods of operation, including, but not limited to, the manufacturing, distribution, importation, storage, safeguarding, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

9. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

## APPLICABLE STATUTE

10. 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) makes it unlawful for any person to knowingly possess with intent to distribute 40 grams or more of a mixture or substance

containing a detectable amount of Fentanyl (N-Phenyl-N-[1-(2-phenylethyl) -4- piperidinyl] propenamide). Fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

*Well-Being Check of CRUZ on August 11, 2024 in Santa Cruz, CA*

11.     On August 11, 2024, the Santa Cruz County Sheriff's Office (hereinafter, "SCCSO") dispatch received a phone call requesting a welfare check on an unknown male passed out inside a vehicle in the area of the Aptos Polo Grounds (2255 Huntington Drive, Aptos, California 95003). The reporting party described vehicle as a black Chevrolet Tahoe and provided a license plate number. At approximately 1540 hours, SCCSO deputies were dispatched to the aforementioned area in search of the suspected unconscious male in the black Chevrolet Tahoe described by the reporting party.

12.     At approximately 1555 hours, SCCSO deputies located the black Chevrolet Tahoe. A male, later identified as Jorge Luis CRUZ ("CRUZ"), was seated in the front driver's seat of the Chevrolet and appeared to be unconscious prior to being roused by a deputy knocking several times on the driver's window. CRUZ was the only individual present in the vehicle. A SCCSO deputy reported that he immediately noted CRUZ's eyes to be red and bloodshot. The same deputy reported that, as CRUZ looked for his license, he (the deputy) observed a "tooter" lying on CRUZ's left thigh. In the initial arrest report, the deputy describes a "tooter" as an improvised tube, usually a straw, used to snort or inhale controlled substances. The reporting deputy stated that CRUZ then grabbed the "tooter" from his thigh and placed it in the driver's door panel. When asked by a deputy on scene, CRUZ stated he used "crystal" earlier in the day.

13.     At approximately 1557 hours, SCCSO deputies asked CRUZ to exit the vehicle. Once out of the vehicle, SCCSO deputies detained CRUZ in handcuffs. Upon being placed in

4

handcuffs, a SCCSO deputy asked CRUZ for identification. CRUZ stated to deputies that he (CRUZ) did not have identification on him. A SCCSO deputy asked CRUZ for his name, and CRUZ responded, "Jorge Luis Cruz Ibarra." A SCCSO deputy located a California State Identification card within the vehicle for CRUZ, displaying the name "JORGE LUIS IBARRA."[1]

14. At approximately 1558 hours, SCCSO deputies conducted a search of CRUZ's person. Various items of evidence were seized during the search, including:

- Plastic bag with 4.9 grams of total gross weight ("TGW") of suspected fentanyl
- Tinfoil with 0.7 grams of TGW of suspected fentanyl

15. While searching the interior of the Black Chevrolet Tahoe, a SCCSO deputy located a small black shoulder bag lying on the driver-side floorboard. Inside the black bag, the same SCCSO deputy located the following items:

- An operational scale containing a white chalky residue
- A plastic bag with 15.7 grams of TGW of suspected fentanyl
- A plastic bag with 25.3 grams of TGW of suspected fentanyl
- A plastic bag with 2.5 grams of TGW of suspected fentanyl
- A plastic bag with 10.1 grams of TGW of suspected fentanyl inside a plastic container
- A plastic container with 37.8 grams of TGW of suspected fentanyl
- A plastic bag with 4.5 grams of TGW of suspected fentanyl

16. Due to the inherent risk of SCCSO deputies being exposed to airborne fentanyl while searching the aforementioned bag, a SCCSO deputy asked CRUZ if the substance was fentanyl. CRUZ responded to the effect of it probably was (fentanyl).

---

[1] A review of CRUZ's California State Identification card includes the signature "JORGE CRUZ".

17. The suspected fentanyl was submitted to the DEA Western Regional Laboratory for testing. In total, lab testing results showed net weights of approximately 61.98 grams of fentanyl and approximately 10.3 grams of methamphetamine were seized from CRUZ.



*Figure 3: Evidence seized from CRUZ during his arrest on August 11, 2024*

18. Fentanyl is a potent synthetic opioid drug approved by the Food and Drug Administration for use as a pain reliever and anesthetic. It is around 100 times more potent than morphine and about 50 times more potent than heroin, and it is a major contributor to fatal and nonfatal overdoses in the U.S. According to the Centers for Disease Control and Prevention (CDC), most recent overdoses related to fentanyl are associated with illegally-made fentanyl (as opposed to pharmaceutical fentanyl), which is frequently combined with other drugs due to its potency – making the resulting substance stronger and more dangerous. In fact, in September 2021, the DEA issued its first Public Safety Alert in six years to warn of the alarming increase in

6

the availability and lethality of fake prescription pills containing fentanyl in the U.S. According to more recent DEA lab testing, 7 out of every 10 pills with fentanyl contain a potentially lethal dose: only 2 mg (0.002 g). Among other methods of ingestion, fentanyl can also be injected, snorted, or smoked.

19.     The trafficking and distribution of fentanyl has fueled the dramatic increase in overdose fatalities over the last years, including within Santa Cruz County. See https://shf.santacruzcountyca.gov/SheriffHome/Transparency/MedicalExaminerDataPortal/OverdoseDeaths.aspx (last accessed March 24, 2025).

20.     The fentanyl seized from CRUZ was in the form of a white powder. Based on my training and experience, and conversations with other agents/officers, the amount of fentanyl seized from CRUZ on August 11, 2024, is consistent with possession for distribution, as opposed to possession for mere personal use. As stated above, one lethal dose can be only 2 mg. This is corroborated by the facts and circumstances outlines above, including the presence of a functional scale containing a white chalky residue. Based on my training and experience, individuals who are engaged in illegal drug use, not distribution, typically carry smaller quantities of narcotics, enough for only a few doses or "uses". This is often due to the price of the narcotics, the fear of detection by law enforcement and the potential legal ramifications, in addition to the risk of other drug users/dealers taking the narcotics from the individual (i.e. robbery). However, drugs dealers and traffickers will often possess larger amounts of narcotics so that they can distribute to a number of different customers.

## CONCLUSION

21.     Based on the facts and circumstances above, there is probable cause to believe that CRUZ violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), which makes it unlawful for any

person to knowingly possess with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of Fentanyl (N-Phenyl-N-[1-(2- phenylethyl) -4-piperidinyl] propenamide), on or about August 11, 2024 (Count One). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for CRUZ's arrest.

/s/ Curtis Ames/SvK w/permission
Curtis J. Ames
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 24th day of March 2025.

_____
HONORABLE SUSAN VAN KEULEN
United States Magistrate Judge